UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SRS DISTRIBUTION INC, <br><br> Plaintiff, <br><br> v. <br><br> EDWARD ROSE DEVELOPMENT COMPANY LLC, et al., <br><br> Defendants. | Case No. 2:25-CV-169-GSL-AZ |

## OPINION AND ORDER

This matter is before the Court on Defendant Edward Rose Development Company, LLC's ("Edward Rose") Motion to Dismiss Plaintiff's Complaint [DE 8].[1] The Motion has been fully briefed [DE 8-1; DE 12; DE 16] and is now ripe for judgment. An oral hearing was also held on August 7, 2025, to discuss the Motion [DE 29]. For the reasons below, the Court **GRANTS** Defendant Edward Rose's Motion.

## BACKGROUND

On April 11, 2025, Plaintiff SRS Distribution d/b/a Stoneway Roofing Supply ("SRS Distribution") brought suit against Defendants Edward Rose, Edward Rose Construction, Rieber Contracting, Inc. (RCI), and Jalon Rieber [DE 1, ¶¶ 2–5]. SRS Distribution raises several state law claims against Defendants, including: (1) foreclosure of mechanic's lien, (2) breach of agreement (as to RCI), (3) breach of agreement (as to Defendant Rieber), (4) quantum meruit, and (5) accounts stated.

*Factual Background*

---

[1] Edward Rose's Motion was originally joined by co-defendant Edward Rose Construction [DE 8]. Edward Rose Construction, however, was dismissed from this action pursuant to SRS Distribution's Voluntary Motion to Dismiss. [*See* DE 39]. Thus, Edward Rose's Motion will be treated as if filed by Edward Rose alone.

Plaintiff SRS Distribution is engaged in the business of supplying roofing materials. [DE 1, ¶ 10]. Sometime around July 6, 2023, SRS Distribution entered into a contract (hereinafter, the "Agreement") with Defendant RCI, a roofing contractor, to furnish, supply, and deliver roofing materials for RCI projects. [*Id.*, ¶ 11]. RCI, in turn, contracted with Defendant Edward Rose, the general contractor and owner of a property located at 9047 Connecticut Street, Merrillville, IN 46410 (hereinafter, the "Property"), to perform roofing work. [*Id.*, ¶¶ 6, 13]. SRS Distribution alleges that on or around August 26, 2024, it completed its performance of the Agreement's material terms and satisfied all conditions precedent to payment by making the final delivery of roofing material and supplies to the Property. [*Id.*, ¶¶ 15–17]. SRS Distribution further alleges the roofing materials furnished, supplied, and delivered by it were accepted, necessary and valuable, of excellent quality, and used in the improvement of the buildings or structures located on the Property. [*Id.*, ¶¶ 17–18]. SRS Distribution alleges, however, that despite requesting payment for the supplied materials, it has not received the full payment. [*Id.*, ¶ 19]. SRS Distribution claims it is entitled to a mechanic's lien on the Property, and on September 20, 2024, alleges it recorded such a lien for the roofing materials it furnished, supplied and delivered.[2] [*Id.*, ¶ 20]. SRS Distribution alleges the mechanic's lien was recorded in Lake County, Indiana and is identified as Instrument No. 2024-531804. [*Id.*].

*Procedural Background*

---

[2] Paragraph 21 of the Complaint states that SRS Distribution recorded the mechanic's lien on September 20, 2024. [DE 1, ¶ 21]. But under paragraph 26, SRS Distribution alleges it only recorded the Sworn Statement and Notice of Intent to Hold a Mechanic's Lien on this date. [*Id.*, ¶ 26].

On May 27, 2025, Edward Rose filed its Motion to Dismiss [DE 8]. The Motion was fully briefed [DE 8-1, 12, 16] and an oral hearing was held on August 7, 2025, to discuss the Motion [DE 29]. The Motion is now ripe for judgment.

## **LEGAL STANDARD**

In response to a complaint, a party may move to dismiss the action asserting that the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint will survive a 12(b)(6) motion if it contains allegations that state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face rather than merely conceivable "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In essence, this means putting the defendant on notice of the claims being asserted against him. *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (providing that a complaint must "present a story that holds together" and that "[u]nderpinning this framework is a basic rule: a defendant must be given 'fair notice of what the claim is and the grounds upon which it rests'").

Under this plausibility standard, the Court accepts the well-pleaded factual allegations stated in the complaint as true and views them in the light most favorable to the non-moving party. *See Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 332 (7th Cir. 2019). Legal conclusions and conclusory allegations merely reciting the elements of the claim, however, are not entitled to this presumption of truth. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). After a court excises legal conclusions and conclusory allegations from the pleading, it determines whether the remaining factual allegations "plausibly suggest an entitlement to relief." *Id.* The Seventh Circuit has interpreted the *Twombly-Iqbal* standard to

require a plaintiff to "provid[e] some specific facts" to support the legal claims asserted in the complaint. *Id.* (citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). Where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the claim must be dismissed. *Mattice v. Mem'l Hosp. of S. Bend, Inc.*, 249 F.3d 682, 684 (7th Cir. 2001) (alteration omitted).

## DISCUSSION

Edward Rose seeks dismissal of Counts 1 (Foreclosure of Mechanic's Lien) and 4 (Quantum Meruit) of SRS Distribution's Complaint.[3] [DE 8].

### I.    Count 1: Foreclosure of Mechanic's Lien

Beginning with Count 1, SRS Distribution seeks to enforce the alleged mechanic's lien it holds over the Property. [DE 1 at 4]. SRS Distribution claims that the materials it furnished were used in the Property's improvement, that Edward Rose was the record holder and owner of the Property subject to the mechanic's lien, and that it was never paid in full for the materials it furnished. [*Id.*, ¶¶ 23–26]. Edward Rose argues that SRS Distribution's claim for the forfeiture of its mechanic's lien should be dismissed because the mechanic's lien is invalid. [DE 8-1 at 2]. Edward Rose asserts the mechanic's lien's invalidity on two grounds, both of which it states concerns noncompliance with Indiana's statutory requirements. [*Id.*]. First, it contends that the mechanic's lien fails to comply with Indiana Code Section 32-28-3-1-(b)(1)(B) because the materials subject to the lien were not specific to the Property but were instead delivered as part of a general supply contract. [*Id.* at 3]. Second, it argues that the mechanic's lien is in

---

[3] Defendant's Motion also sought dismissal of Edward Rose Construction, arguing that Edward Rose Construction was improperly named as a defendant because it is a non-existent entity. [*See* DE 8-1 at 6]. Recognizing this, SRS Distribution voluntarily moved to dismiss Edward Rose Construction [DE 30], which the Court subsequently granted [*see* DE 39]. Accordingly, this portion of Defendant's Motion is denied as moot.

noncompliance with Indiana Code Section 32-28-3-3(c)(3) because the lien incorrectly names the wrong property owner. [*Id.*].

Mechanic's liens are statutory tools designed to help collect payment for labor and materials used to improve real property. *Serv. Steel Warehouse Co. v. U.S. Steel Corp.*, 182 N.E.3d 840, 842 (Ind. 2022). The purpose of a mechanic's lien is to prevent landowners "from enjoying their improved property while those who provided the labor and materials get the shaft." *Id.* Because mechanic's liens are pure remedies of statutory creation, *see Premier Invs. v. Suites of Am., Inc.*, 644 N.E.2d 124, 127 (Ind. 1994) (citing *Potter Mfg. Co. v. A.B. Meyer & Co.*, 86 N.E. 837, 838 (Ind. 1909)), any provisions relating to the "creation, existence or persons entitled to claim a mechanic's lien are to be narrowly construed since the lien rights are in derogation of common law," *id.* (citing *Puritan Eng'g Corp. v. Robinson*, 191 N.E. 141, 142 (Ind. 1934)). Thus, "the burden is on the party asserting the lien to bring itself clearly within the strictures of the statute." *Id.* Where there is any question as to compliance with a mechanic's lien statute, the statute should be interpreted most favorably toward the landowner and against the lienholder. *See Valley View Dev. Corp. v. Cheugh & Schlegel of Dayton, Inc.*, 280 N.E.2d 319, 326 (Ind. Ct. App. 1972).

As to the first ground of invalidity, Edward Rose argues that "Plaintiff cannot maintain its mechanic's lien because Plaintiff fails to show that it supplied the roofing materials to RCI specifically for use at the Property." [DE 8-1 at 3]. Edward Rose argues this is in violation of Indiana Code Section 32-28-3-1(b)(1)(B), which states: "A person described in subsection (a) may have a lien separately or jointly: (1) upon the . . . building . . . (B) for which the person

5

furnished materials or machinery of any description[.]" Ind. Code § 32-28-3-1(b)(1)(B).[4] Indiana has long held, consistent with the unambiguous language of Section 32-28-3-1(b)(1), that "to entitle a material man to a lien upon any building, he must show that the materials were furnished for the particular building upon which he seeks to obtain a lien." *Talbott v. Goddard*, 55 Ind. 496, 502 (1876); *see City of Crawfordsville v. Barr*, 45 Ind. 258, 261 (1873) ("[I]t is necessary to aver and prove that such materials were furnished for the building sought to be charged with the lien. It is not sufficient to aver that the materials were furnished to the contractor or owner, and that they were used in the construction of the building."); *Hill v. Sloan*, 59 Ind. 181, 186 (1877) (same); *Serv. Steel Warehouse Co.*, 182 N.E.3d at 844 (emphasis omitted) (quoting *Talbott*, 55 Ind. at 502; citing I.C. § 32-28-3-1(b)(1)) ("Under Indiana's mechanic's lien statute, a supplier that furnished materials for the erection of a building, regardless of the recipient, can have a lien on that building and the accompanying land. Of course, the supplier must have furnished the materials 'for the particular building upon which' it bases its lien.").

Here, Edward Rose asserts that SRS Distribution "concedes that its contract with RCI was a general supply agreement—and was not specific to the Property owned by Edward Rose Development." [DE 8-1 at 3]. Edward Rose points specifically to paragraph 11 of the Complaint, in which SRS Distribution alleges it "entered in the Agreement with RCI . . . to furnish, supply, and deliver roofing materials **to RCI Projects**." [*Id.* (emphases in original) (quoting [DE 1, ¶ 11])]. Edward Rose further asserts that the Agreement between SRS Distribution and RCI

---

[4] Edward Rose does not contest that SRS Distribution is a person described in subsection (a), which states in relevant part that "any other person performing labor or furnishing materials or machinery . . . for: (1) the erection, alteration, repair, or removal of: (A) a house, mill, manufactory, or other building . . . may have a lien as set forth in this section." I.C. § 32-28-3-1(a)(1)(A).

contains no specific information about the intended use of the materials, and that the Agreement appears in actuality to be a general credit application submitted by RCI to SRS Distribution for roofing supplies. [*Id.* at 3–4]. Edward Rose contends the Agreement ultimately does not reference Edward Rose, the Property, the Property's address, or the roofing work completed at the Property. [*Id.* at 4].

In response, SRS Distribution argues that while statutory provisions relating to the creation and existence of mechanic's liens should be strictly construed, provisions relating to enforcement of those liens once attached should be liberally construed to achieve their purpose. [DE 12 at 4 (citing *Wind Dance Farm, Inc. v. Hughes Supply, Inc.*, 792 N.E.2d 79, 82 (Ind. Ct. App. 2003))]. Proceeding to the pleadings, SRS Distribution contends that on or about July 6, 2023, it entered into the Agreement with Edward Rose to furnish, supply, and deliver materials to RCI projects. [DE 12 at 4 (citing [DE 1, ¶ 11])]. As part of the Agreement, SRS Distribution alleges it "'furnished, supplied, and delivered' materials to 9047 Connecticut Street, Merrillville, Indiana 46410 (the 'Property') and that those specific materials were 'accepted, necessary, and valuable, and **used in the improvement of the buildings or structures' upon the Property**." [*Id.* (emphasis in original) (quoting [DE 1, ¶¶ 15–17])]. SRS Distribution concludes by stating, "Put another way, [Plaintiff] alleges in its Complaint that pursuant to the agreement with [Edward] Rose, it delivered materials to the Property for the specific use of improving the Property. At this stage, the Court must accept these facts as true." [*Id.* at 4–5].

There are a few issues with SRS Distribution's argument. First, with regard to the appropriate construction of the mechanic's liens provisions, SRS Distribution points to a liberal construction of statutes concerning enforcement of a mechanic's lien. Edward Rose's argument, however, is not whether SRS Distribution has sufficiently pled enforcement of the lien, but

7

instead whether it has pled itself within the confines of the statute for the lien to be valid—thereby requiring a strict statutory construction. *See Premier Invs.*, 644 N.E.2d at 127. To this end, it has not.

It is true, as SRS Distribution indicates, that in paragraphs 15 through 17 it alleges it "furnished, supplied, and delivered roofing materials to the Property," it "completed its performance under the terms of the Agreement by making the final delivery of roofing materials and supplies to the Property," and that "[t]he roofing materials furnished, supplied, and/or delivered pursuant to the Agreement were accepted, necessary and valuable, and used in the improvement of the buildings or structures upon Defendants' Property." [DE 1, ¶¶ 15–17]. But it is also true that SRS Distribution alleges in paragraph 11 that it entered into the Agreement—which it attached to the Complaint and incorporates by reference [*see* DE 1-1]—with RCI (not Edward Rose) to "furnish, supply, and deliver roofing materials to RCI projects." [DE 1, ¶ 11]. And as Edward Rose notes, the Agreement is a general credit application that does not specify any particular materials, properties, or the work that is to be credited for, nor does it reference Edward Rose or the Property. [*See* DE 1-1].

"It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998); *see also Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the non-moving party."). Here, the Agreement SRS Distribution references and relies upon in the Complaint indisputably shows that it has not pled it furnished the materials "for the particular building upon which" the lien is based. *See Serv. Steel*

*Warehouse Co.*, 182 N.E.3d at 844 (quoting *Talbott*, 55 Ind. at 502; citing I.C. § 32-28-3-1(b)(1)). And because the Agreement must control over inconsistent allegations in the Complaint, *see N. Ind. Gun & Outdoor Shows*, 163 F.3d at 454, SRS Distribution has therefore not brought itself within the confines of the strict statutory requirements for establishing a mechanic's lien. *See Premier Invs.*, 644 N.E.2d at 127.

Accordingly, the Court finds that SRS Distribution has not alleged the existence of a valid mechanic's lien on the Property. Count 1 is therefore dismissed as to Edward Rose.[5]

## II. Count 4: Quantum Meruit

Looking next to Count 4, Edward Rose argues that SRS Distribution cannot bring a quantum meruit claim because it bases its claims on an existing agreement. [DE 8-1 at 5]. Quantum meruit, also known as unjust enrichment, contract implied-in-law, constructive contract, or quasi-contract, *see Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991), *cert.*

---

[5] Edward Rose argued in the alternative that the mechanic's lien would be invalid because it incorrectly names Edward Rose Construction as an owner of the Property. [DE 8-1 at 4 (citing DE 1-2)]. Indiana Code Section 32-28-3-3(c)(3) provides, in relevant part, that "[a] statement and notice of intention to hold a lien under this section must specifically set forth: . . . (3) the owner's: (A) name; and (B) latest address as shown on the property tax records of the county[.]" Subsection (c) further provides that "[t]he name of the owner and legal description of the lot or land will be sufficient if they are substantially as set forth in the latest entry in the transfer books described in IC 6-1.1-5-4[.]" *Id.* SRS Distribution's "Sworn Statement and Notice of Intention to Hold Mechanics Lien" in fact lists both Edward Rose and Edward Rose Construction as owners of the Property. [DE 1-2]. To support its argument, Edward Rose relies on the Indiana Court of Appeals' decision in *Logansport Equipment Rental, Inc. v. Transco, Inc.*, 755 N.E.2d 1135, 1137 (Ind. Ct. App. 2001), in which the court found invalid a mechanic's lien notice where an incorrect (but similarly named) entity was listed. The court found that listing the wrong entity would disturb the policy-based objectives of (1) providing the record titleholder of the property with notice that a mechanic's lien has been placed upon their real estate and (2) putting third party purchasers and money lenders on notice of the same fact. *Id.* But in contrast to *Transco*, here Edward Rose was correctly identified on the mechanic's lien notice, and thus the concerns identified by the court in *Transco* are absent where any third-party searchers would be able to track Edward Rose as the titleholder of record and see any mechanic's liens placed upon its property. *See id.* at 1137–38. The fact that Edward Rose Construction was also erroneously named on the notice does not appear to impact the notice to third-party searchers as it relates to Edward Rose. *Cf. Beneficial Fin. Co. v. Wegmiller Bender Lumber Co.*, 402 N.E.2d 41, 46 (Ind. Ct. App. 1980) (noting that "where property is held by husband and wife as tenants by the entireties, we fail to see how any third party could claim to have been misled or prejudiced by the fact a mechanic's lien claimant included the name of only one spouse as 'owner' of the property in a statutory notice"), *reh'g denied*. Therefore, unlike Edward Rose's first invalidity argument, the Court would be unable to reach the same conclusion as to its alternative argument.

*denied*, 502 U.S. 1094 (1992)), "is a legal fiction invented by the common-law courts in order to permit a recovery . . . where, in fact, there is no contract, but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise." *Woodruff v. Fam. & Soc. Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012) (quoting *Clark v. Peoples Sav. & Loan Ass'n*, 46 N.E.2d 681, 682 (Ind. 1943)). To bring such a claim, three elements must be articulated: "(1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Id.* That said, when the parties' rights are governed by an express contract, a quantum meruit claim fails as a matter of law because recovery cannot be based on a theory implied in law. *See Correct Roofing, Inc. v. Vasquez*, 246 N.E.3d 328, 340 n.4 (Ind. Ct. App. 2024) (citing *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992), *trans. denied*).

Here, Edward Rose asserts that SRS Distribution alleges the existence of, and bases its claim upon, valid agreements. [DE 8-1 at 6]. Edward Rose points to Counts 2 and 3, in which SRS Distribution brings breach of contract claims against Defendants RCI and Rieber. [*Id.*]. Under Count 2, SRS Distribution alleges "[t]he Agreement between [Plaintiff] and RCI constitutes a fully binding contract" and that "[t]he Agreement required prompt and full payment of all obligations for materials and supplies provided by [Plaintiff.]" [DE 1, ¶¶ 32–33]. Moreover, under Count 3, SRS Distribution alleges "[t]he Personal Guarantee executed by Rieber constitutes a fully binding contract" and that "[t]he Personal Guarantee required Rieber to provide prompt and full payment of all obligations which RCI had to [Plaintiff]." [*Id.*, ¶¶ 39–40]. Finally, under Count 4, SRS Distribution incorporates paragraphs 1 through 44 (including those allegations raised under Counts 2 and 3) and states, "Pursuant to RCI and Rieber's requests,

[Plaintiff] provided roofing materials and supplies to RCI and Rieber for their benefit. The provided materials were beneficial to the Defendants." [*Id.*, ¶¶ 45–46].

In response, SRS Distribution argues, pursuant to Federal Rule of Civil Procedure 8, that it may permissibly plead alternative theories of relief under both legal and equitable grounds, even if those theories are ultimately inconsistent. [DE 12 at 7 (citing *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003)]. Although it concedes it would not be able to recover under its quantum meruit claim should the Court determine that a valid contract exists for each of its breach of contract claims, SRS Distribution nonetheless contends it is free to plead an alternative theory at this stage of the litigation. [*Id.* at 8]. A few points should be addressed with regard to SRS Distribution's argument.

First, despite SRS Distribution contending that it is "pleading an alternative theory of relief by pleading a quantum meruit claim along with its breach of contract claims," [DE 12 at 7], a "legal claim" and a "legal theory" are not synonymous. The Seventh Circuit recently explained the difference between a claim and legal theory as follows:

> A claim is the set of operative facts that produce an assertable right in court and create an entitlement to a remedy. A theory of relief is the vehicle for pursuing the claim; it may be based on any type of legal source, whether a constitution, statute, precedent, or administrative law. The specific theory dictates what the plaintiff needs to prove to prevail on a claim and what relief may be available. One lawsuit may raise multiple claims, and each claim may be supported by multiple theories.

*Roberts v. Smith & Wesson Brands, Inc.*, 98 F.4th 810, 815 (7th Cir. 2024) (quoting *St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023)). Here, SRS Distribution, whether discussing Counts 2 and 3 or Count 4, is ultimately bringing a claim for a breach of an agreement—whether express or implied, and thus each of these counts is premised upon the same operative facts. Therefore, SRS Distribution is really raising separate theories upon which

11

it seeks relief, and the Court must assess the sufficiency of SRS Distribution's allegations in this light.

Second, with regard to alternative pleading, Rule 8 permits a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). But while a plaintiff "need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (quoting *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000)).

Here, SRS Distribution argues it is pleading alternative theories of a contract breach, both express (Counts 2 and 3) and implied (Count 4). [DE 12 at 7]. But when referencing the allegations going to SRS Distribution's quantum meruit claim under Count 4, it is clear that it is incorporating by reference allegations going to the existence of an express contract. [*See* DE 1, ¶ 45 ("Plaintiff repeats, re-alleges, and incorporates all of the allegations set forth in Paragraphs 1 through 44 as though fully set forth herein.")]. SRS Distribution's subsequent allegations do not state that it is pleading in the alternative, nor does it offer any additional context to provide notice that it intends to do so. *Cf. Purizer Corp. v. Battelle Mem'l Inst.*, 2002 WL 22014, at *5 (N.D. Ill. Jan. 7, 2002) (dismissing unjust enrichment count where the count incorporated by reference paragraphs alleging the existence of contracts); *Pittsfield Dev., LLC v. Travelers Indem. Co.*, 542 F. Supp. 3d 791, 804 (N.D. Ill. 2021) (listing cases explaining that breach of contract and unjust enrichment claims may not be pled together if allegations of a contract are incorporated into the unjust enrichment claim).

Finally, Edward Rose raises no contentions that SRS Distribution's breach of contract allegations are conclusory or not well-pled, suggesting that the Court would in fact accept these allegations as true. *See Menzies*, 943 F.3d at 332. Moreover, Count 4 is entirely devoid of allegations that the agreements between SRS Distribution and RCI and Rieber were invalid, non-existent, or implied, thereby suggesting that these are in fact valid and express contracts. To this end, the pleadings, as written, suggest SRS Distribution intended to pursue a claim based on the presence of an existing contract rather than a fictional one. When accepted as true, this would inherently defeat SRS Distribution's quantum meruit theory under Count 4 as a matter of law. *See Correct Roofing*, 246 N.E.3d at 340 n.4 (citing *Keystone Carbon Co.*, 599 N.E.2d at 216).

Accordingly, SRS Distribution has pled itself out of court with respect to Count 4. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (internal quotation marks omitted) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits."). Count 4 is therefore dismissed.

## CONCLUSION

Edward Rose's Motion to Dismiss [DE 8] is **GRANTED**. Counts 1 and 4 are therefore dismissed with regard to Edward Rose. Because it appears to be implicated only under these counts, Edward Rose is **DISMISSED** from Plaintiff SRS Distribution's Complaint [DE 1] without prejudice. Defendants RCI and Rieber, along with all of the counts against them, remain active under Plaintiff SRS Distribution's Complaint. Defendant Edward Rose, however, remains active under Defendant RCI's Cross-Claim Complaint [DE 52].

SO ORDERED.

ENTERED: December 29, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court